```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           20 CR 351 (SHS)

INIGO PHILLBRICK,

            Defendant.
                                         Conference
------------------------------x

                                         New York, N.Y.
                                         July 29, 2020
                                         10:00 a.m.

Before:

                  HON. SIDNEY H. STEIN,

                                         District Judge

                       APPEARANCES

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
BY:  CECELIA VOGEL
     Assistant United States Attorney

BRILL LEGAL GROUP
     Attorneys for Defendant
BY:  PETER E. BRILL
```

1           (Case called)

2           THE COURT:  Good morning this is Judge Stein.  This is
3  a case against Inigo Philbrick.  Because everyone is remote
4  here, I'm going to ask that everyone speak loudly, slowly, and
5  clearly.  Pause after you're done so that I can respond.  If
6  I'm asking a question, I'll pause.

7           I'd like counsel to make their appearances, please.
8  For the government.

9           MS. VOGEL:  Good morning, your Honor.  Cecilia Vogel
10 for the government on the line.

11          THE COURT:  Good morning.

12          For the defendant, Mr. Philbrick.

13          MR. BRILL:  Peter Brill on behalf of Mr. Philbrick.
14 Good morning, your Honor.

15          THE COURT:  Good morning.

16          Now, I have Mr. Brill's letter.  What he's saying --
17 and I've read it, Mr. Brill, obviously.  Let me just say that
18 it's important that we had honor all of the precautions that
19 have been put into place by the BOP to prevent the spread of
20 COVID.

21          One of the points in your letter is that you seem to
22 be objecting to quarantine because your client has come from
23 other places and has been tested.  Well, the fact that he's
24 come from other places -- including Guam, Hawaii, Nevada, and
25 Oklahoma -- certainly increases the importance of his being

1   tested and quarantined when he arrives at a new place.

2   But whatever the BOP procedures are for preventing the
3   spread of COVID, it seems to me I'd be inclined not to overrule
4   them. You seem to be concerned that he's in quarantine.

5   Let me repeat before I give you an opportunity to
6   respond. The COVID protocol is that when somebody comes into
7   the facility, he or she is quarantined.

8   THE COURT: Mr. Brill, what can I do for you, sir?

9   MR. BRILL: Thank you, your Honor.

10   Most of the information that I provided to the Court
11   was by way of background, A, other than the fact that
12   Mr. Philbrick had been at the MCC for almost two weeks and BOP,
13   for no apparent reason, moved him to the MDC; and B, initiated
14   another quarantine period.

15   What they're telling him is it will be three weeks.
16   Again, it was strange he was moved. No one knows why he was
17   moved. And then it was just odd again that there's a
18   quarantine period.

19   I'm not disagreeing with your Honor that a quarantine
20   is appropriate for peopling coming into a new facility. I just
21   found it a little bit odd in these circumstances.

22   THE COURT: Mr. Brill, what can I do to help you, sir?

23   MR. BRILL: I would just like to figure out a way
24   where I can have an actual privileged conversation with
25   Mr. Philbrick where he's not yelling in the hallway in the SHU

1  on the phone before another three weeks have elapsed.

2  THE COURT: It seems to me that your client is
3  entitled to have a privileged conversation with his lawyer.
4  Now, I must say that there have been difficulties in a number
5  of cases with people getting access to phones and so forth.
6  That's certainly even truer I think if somebody is in
7  quarantine. But, yes. It's important that he have the ability
8  to speak with his counsel.

9  As I understand your letter, you're saying that when
10  he is in quarantine, there's no ability to speak privately with
11  you.

12  Is that true?

13  MR. BRILL: Based upon Mr. Philbrick's description of
14  how these last two calls have taken place, that is true, your
15  Honor.

16  THE COURT: Ms. Vogel, what do you say?

17  It seems to me that you will agree that somebody in a
18  detention facility is entitled to have an attorney-client
19  confidential call.

20  So what can you tell me?

21  MS. VOGEL: Yes. I certainly agree with that, but I
22  have spoken with both the MCC and the MDC this morning and
23  gotten some information that I think will be helpful in
24  informing everyone as to what's going on here.

25  First, just to go back to Mr. Philbrick's time at the

1    MCC with respect to the call, the video call that had been
2    scheduled on July 20, BOP has represented to me that it appears
3    as a mistake by Federal Defenders who were coordinate these
4    calls.
5              Mr. Philbrick was accidentally left on the list of
6    defendants to have calls that day, and they were unable to
7    accommodate the call, given that he was not on the list.
8              Second, Mr. Philbrick was moved from MCC to MDC
9    because of a bed space shortage at MCC.  My understanding is
10   that MCC has not been taking new inmates for a couple of weeks
11   now because they have been completely full.
12             So for that reason, some inmates -- I don't know how
13   many -- were moved.  And that is the reason for Mr. Philbrick's
14   move to MDC.  It was a space issue at MCC.
15             Mr. Philbrick is currently in isolation because BOP
16   believes he's been exposed to someone who's tested positive.
17   So they have tested him again and are keeping him in isolation
18   until they get that test result.
19             My understanding from the facility is that currently
20   test results are coming in within about two to six days of
21   being tested.  And that, yes.  Regardless, Mr. Philbrick, being
22   transferred from MCC to MDC, would have to do 14 days of
23   quarantine because he's moving between facilities and that all
24   inmates going through that quarantine process are tested on the
25   14th day just to ensure, before they're transferred out of

1   quarantine, that they are testing negative.

2   Just to be clear, Mr. Philbrick is not showing any
3   symptoms, but in an abundance of caution, they are testing him
4   because they believe he's been exposed.  They are keeping him
5   isolated for that reason.

6   In speaking with the facility, my understanding is
7   that they are not able in this isolation unit to provide the
8   VTC.  It's not possible, given the setup of the unit, and that
9   currently the phone calls, the one call, as he's done, is the
10  way that they're able to provide calls is my understanding just
11  because he's in the isolation unit.

12  THE COURT:  So what you're saying is the isolation
13  unit is the same as quarantine?  Is that it?

14  MS. VOGEL:  I believe, your Honor, that it's slightly
15  more restrictive.  I'm not sure that with quarantine they're
16  quite as isolated as in -- I believe the isolation unit is for
17  individuals who are symptomatic or who may have been exposed to
18  someone.

19  So they keep them really more separate from everyone
20  else is my understanding, and that quarantine is somewhat less
21  restricted.  I believe the quarantine is more in a pod is my
22  understanding, while isolation is more you're on your own
23  individually.

24  THE COURT:  So if I understand you, he is currently
25  being isolated because they believe he was exposed to someone

1    who was positive. I have no problem with that, assuming that's
2    the case. And that will be for 14 days.
3              Do you know when that's up by any chance?
4              MS. VOGEL: I believe it is counting from the Friday
5    when he was moved, the last Friday. So even if he tests
6    negative now in isolation, he will have to finish the 14-day
7    quarantine period, which looks like it should end on the 7th.
8              On that 14th day, he will be tested again. And
9    assuming that test comes back negative, he would then be
10   released from quarantine. That's the protocol that BOP is
11   following.
12             THE COURT: Thank you.
13             Then when he is released from quarantine, he's able to
14   have a private phone call.
15             Is that it?
16             MS. VOGEL: That's my understanding. Or whatever
17   process they've been using. I don't exactly know the setup.
18   But to the extent that Mr. Philbrick had calls with defense
19   counsel prior to this, it would be under that same format. It
20   would be a video call with attorneys, how they set that up.
21             THE COURT: While he is in isolation, you're saying
22   there is no way to have a private phone call?
23             MS. VOGEL: I haven't asked BOP that specifically, but
24   my understanding is that he is, we think, isolated and that
25   they're able to I think provide access to his cell, other than

1  currently doing it as defense counsel described.

2          THE COURT:  All right.  Well, this is what I propose.

3  Again, these protocols, by and large, are for the health of the

4  inmates under these conditions of the pandemic.

5          What I'd like you to do, Ms. Vogel, is double-check

6  with the BOP to see if there is any way he can have a private

7  call with his attorney while he's in isolation.

8          If not, I want you to make sure that he has the

9  ability to have a private call with his attorney when he's

10  released from isolation and quarantine, which as of now should

11  be about August 7.

12         Mr. Brill, it looks actually that you've had an

13  opportunity to speak privately with your client -- you say that

14  in your letter as he was being moved about the country.

15         I don't want to interfere here.  I want to expedite

16  things.  But, Mr. Brill, it looks and sounds as if there's a

17  system whereby if you work through the Federal Defenders,

18  you're able to set up calls.

19         So what I'm saying is I don't want to set up a

20  parallel system that will mess up the bureaucracy.

21         Speak to me, Mr. Brill.

22         MR. BRILL:  That part was technically working fine

23  until the two longer calls, longer video calls that we had set

24  up were both canceled by one side or the other.  I don't think

25  we need to ascribe blame.

1      The letter was for two purposes: The first one we've
2 addressed which is there is no way to do anything for the next
3 couple of weeks give or take. The second was just more
4 general, to give the Court an understanding of what is going on
5 with this case so that at our initial conference, whenever that
6 is at this point, you'll have some context for where we stand.
7 Thank you, your Honor.
8      THE COURT: I would appreciate it, under the
9 circumstances is of the pandemic, Mr. Brill, if you seek the
10 Court's assistance for a specific issue rather than wanting to
11 give me background on what's been happening.
12      MR. BRILL: I'm sorry, your Honor.
13      THE COURT: Let me just continue.
14      As you know, again, under these conditions, there has
15 to be some significant advance notice in order for the BOP to
16 set up a call. And my deputy has attempted to set up a call
17 for August 7. It awaits verification from the BOP -- I'm
18 sorry. August 11. It awaits verification from the BOP.
19      It seems to me if the likelihood that he's not going
20 to be able to speak to you privately until the 8th at the
21 earliest, that it doesn't make that much sense for us to have
22 our initial pretrial conference with the defendant on the 11th.
23      You actual me, Mr. Brill. But it seems to me, given
24 your desire to speak at length with him, because you talk about
25 that in your July 28 letter, how nothing is to be gained by

1    setting it on August 11.

2            I want to move this case forward. We should. But
3    also you need to have the opportunity to speak with your client
4    as you say here that you want to do it.

5            So you tell me. When do you want to have a conference
6    in this case, sir?

7            MR. BRILL: Yes, your Honor. Just very briefly to
8    clarify the point of the letter was exactly that. I did want
9    some help, if possible, in being able to speak to him sooner
10   three than later. But we've resolved that issue, and I
11   understand where we stand.

12           If the Court would be so kind as to set it say for
13   maybe the 20th instead of the 11th -- I know you can only do it
14   on Tuesdays and Thursdays -- that might be better.

15           THE COURT: All right. Let me just speak to my deputy
16   here because she has the schedule.

17           (Pause)

18           THE COURT: All right. My deputy will try to set it
19   up for all 20. Apparently, there are only two time slots
20   available. She'll notify you when she gets that available.
21   August 20. I will tentatively set it for 10:00, but I'll sign
22   an order once we get an actual time slot.

23           Mr. Brill, make sense?

24           MR. BRILL: Yes, your Honor.

25           THE COURT: Ms. Vogel, make sense?

1     MS. VOGEL:  Yes.  I will call BOP about private
2  attorney calls and make sure to inform Mr. Brill.
3     THE COURT:  All right.  I think everybody is working
4  in tandem here.  We still have to stay conscious of the need to
5  prevent the spread of the pandemic, and the defendant has the
6  right obviously to speak with his attorney.  I think we're all
7  on the same page, and I appreciate everybody's cooperation.
8     Now, Mr. Brill, obviously your client is incarcerated.
9  I take it you're waiving his appearance for purposes of this
10 conference.
11    MR. BRILL:  Yes.  Thank you, your Honor.
12    THE COURT:  All right.  Fine.  Let's meet again on
13 August 20.
14    Is there anything, government?
15    MS. VOGEL:  Your Honor, I think -- perhaps this would
16 be an appropriate time to make this request.  Currently time is
17 excluded until I believe it is August 13.  Given that our
18 initial conference now is tentatively scheduled for August 20,
19 I would request to exclude time until that conference date, the
20 20th, given some of these delays related to COVID and to give
21 counsel an opportunity to discuss the case at greater length
22 with his client.
23    THE COURT:  All right.  Mr. Brill, what's the
24 defense's response?
25    MR. BRILL:  We have no objection, your Honor.

1               THE COURT:  All right.  The government having moved
2    for the exclusion of time and the defense stating it has no
3    objection to that exclusion, I deem the motion made by the
4    government pursuant to 18 U.S. Code, Section 3161(h)(7)(A).  I
5    grant the motion.  I do find that the ends of justice outweigh
6    the interest of the public and the defendant in a speedy trial.
7               The purpose is to enable under these pandemic
8    conditions for the defense to have time to speak with his
9    client and, for that matter, for the government to begin or to
10   continue fulfilling its discovery obligations.
11              This exclusion is from today until August 20.
12              All right.  Thank you.  I appreciate everyone's
13   cooperation.  The Court is leaving the call at this time.
14              (Adjourned)